Dear Ms. Livingston, Mr. Simon and Mr. Tallo:
After meeting with both Ms. Livingston and Mr. Simon to discuss issues regarding special legislative charters and the fire and police civil service system, and after having received a request for reconsideration and clarification of Attorney General Opinion Numbers 00-288 and 00-233, we are issuing this opinion to specifically address these questions:
 1. Can the position of chief of police in a special charter form of government with a population exceeding 13,000, presently chosen by the mayor and council, be changed to an elected position?
 2. If so, under what circumstances?
 3. Is Attorney General Opinion No. 83-876 in conflict with the opinion herein?
 4. Is Attorney General Opinion Nos. 00-233 and 00-288 in conflict with the opinion herein; more specifically:
 (A.) Whether the position of Police Chief may be removed from the classified service in a particular municipality, and specifically, in the City of Hammond?
 (B.) Must the legislature approve such a position removal by either a simple majority or a 2/3 majority vote?; and
 (C.) Whether any constitutional provision or statute prevents the elimination of the class of Police Chief by the local Civil Service Board when the single class holder leaves office?
 5. Can the position of chief of police in a special charter form of government with a population exceeding 13,000, presently chosen by the mayor and council, be contracted to a private firm?
 6. If yes, can a whole department be contracted to a private firm?
Question No. 1: Can the position of chief of police in a special charter form of government with a population exceeding 13,000, presently chosen by the mayor and council, be changed to an elected position? In our opinion, the answer is yes.
Question No. 2: If so, under what circumstances? The procedure for doing so is established in (1) the constitution and (2) R.S. 33:2481. Our opinion that same can be done is based on Art. X, § 18 of the 1974 Constitution, which provides:
 Section 18. Except as inconsistent with this Part, the provisions of Article XIV, Section 15.1 of the Constitution of 1921 are retained and continued in force and effect as statutes. By law enacted by two-thirds of the elected members of each house, the legislature may amend or otherwise modify any of those provisions, but it may not abolish the system of classified civil service for such firemen and municipal policemen or make the system inapplicable to any municipality having a population exceeding thirteen thousand according to the latest decennial federal census or to any parish or fire protection district operating a regularly paid fire department. . . . (Emphasis added).
The provisions of Article XIV, Section 15.1 of the 1921 Constitution were retained in Louisiana Revised Statutes, Title 33, Chapter 5, Part II, Fire and Police Civil Service Law For Municipalities Between 13,000 and 250,000, cited as R.S. 33:2471 — 2508. The present constitution specifically retains these provisions, but restricts the legislature from amending or modifying these provisions unless by a two-thirds vote of each house, and further prohibits the abolishment of the system for such firemen and municipal policemen. Upon examination of Article XIV, Section 15.1 (1921), Subparagraph 11 specifically lists the firemen under the classified service. The chief is the first one listed. Also listed in subparagraph 11 (b) are those persons who comprise the unclassified service. Officers elected by popular vote are listed in the unclassified service. See now, R.S. 33:2481.
Thus, we are of the opinion that the law, as retained by the 1974 Constitution, allows for an unclassified position of an elected officer under the Fire and Police Civil Service Law for Municipalities between 13,000 and 250,000. The next question to be answered is whether a municipality can change from an appointed position to an elected position to fall within this authorization for unclassified service under R.S.33:2481 (B)(2).
A home rule charter government may be amended in accordance with the Constitution, Art. VI, § 5. A special legislative charter may be amended by an act of the legislature or local ordinance. LSA-Const. Art. VI, § 2 (1974). Additionally, a special legislative charter may be amended in accordance with LSA-R.S. 33:1181, where said charter was existing prior to July 29, 1898, has a population of 200,000 or less, and has not come under the provisions of the Lawrason Act. Nevertheless, we have opined that amendment by way of R.S. 33:1181 must be in compliance with the Lawrason Act. See, Atty.Gen.Op. No. 97-42.
The Lawrason Act, R.S. 33:381.1, allows a majority of the qualified electors to vote for the purpose of authorizing the mayor to appoint a marshal/chief of police with the approval of the board of aldermen, rather than have an elected marshal. And vice versa, the people may vote to elect the marshal rather than have him appointed. Therefore, should a special legislative charter municipality choose to follow the proper procedure in amending its charter to provide for an elected chief of police, same would be in compliance with the Lawrason Act, as we opined is necessary in Atty.Gen.Op. No. 97-42.
Thus, we are of the opinion that the reason for the exception for elected officials in R.S. 33:2481 is to recognize this elected/appointed authority for the marshal/chief of police position in the Lawrason Act.
Question No. 3: Is Attorney General Opinion No. 83-876 in conflict with the opinion herein?
Attorney General Opinion No. 83-876 answered the question of whether the position of Fire Chief for the City of Hammond could be changed from a classified civil service position to an unclassified civil service position. This office was of the opinion that the charter of the City of Hammond could be amended to provide for the selection of the Fire Chief by some method other than appointment by the mayor or other officer or employee of the municipal government. The result would be to change the position from a classified civil service position to an unclassified civil service position.
We reached this opinion from a reading of Art. 14, Sec. 15.1 (11)(b)(5), codified as R.S. 33:2481 (B)(5), which provides:
 B. The unclassified service shall comprise the following:
 * * *
 (5) Any position of employment, the duties of which are included in the classified service, to which the right of employee selection, appointment, supervision, and discharge is vested in and with those other than the municipal government or an officer or employee thereof. (Emphasis added).
In the charter of the City of Hammond [Art. IV, Sec. 4-05], employee selection was vested in the mayor, subject to council confirmation. Thus, employee selection was vested in the municipal government. However, if an amendment was made to the charter to provide for employee selection by some method other than the municipal government, municipal officer, or municipal employee, the exemption in R.S. 33:2481 (B)(5) would provide for the position to be unclassified. Therefore, Attorney General Opinion No. 83-876 is consistent with our reasoning herein.
Question No. 4: Are Attorney General Opinion Nos. 00-233 and 00-288 in conflict with the opinion herein? More specifically, (A) Whether theposition of Police Chief may be removed from the classified service in a particular municipality, and specifically, in the City of Hammond? (B) Must the legislature approve such a position removal by either a simple majority or a 2/3 majority vote? (C) Whether any constitutional provision or statute prevents the elimination of the class of Police Chief by the local Civil Service Board when the single class holder leaves office?
The City of Hammond takes issue with this statement of Opinion No. 00-288:
 . . . we have concluded in Atty. Gen. Op. No. 00-233 that the person performing the duties of the Chief must remain in the Civil Service System unless there is a Constitutional change inasmuch as La. Const., Art. 10, Sec. 16 creates classified fire and police civil service . . . Moreover, Art. 10, Sec. 18 directs that the legislature "may not abolish the system of classified civil service for such firemen and municipal policemen or make the system inapplicable to any municipality.
And this statement of Opinion No. 00-233:
 . . . the authority given to two-thirds of the elected members of each house to amend or modify the provisions of the 1921 Constitution which were retained as statutes does not authorize the legislature to enact a statute which would allow exemption of an individual from civil service as the situation may arise . . . Section 18 of Article 10 . . . explicitly states that the legislature may not abolish the system of classified service for such firemen and municipal policemen or make the system inapplicable to any municipality. We feel this clearly reflects that civil service cannot be abolished by the legislature for fire and police departments as a whole or for the position of Chief of Police which is included in the civil service system under R.S. 33:2481.
To prevent confusion we are recalling Attorney General Opinion Numbers00-288 and 00-233 and restating our opinion herein with respect to theseissues:
 (a) Whether a constitutional amendment is required to remove a position, such as the chief of police, from the classified service, as listed in R.S. 33:2481? The short answer is no, as explained below.
 (b) Whether the legislature may modify R.S. 33:2481, and if so, whether same must be done by a two-thirds vote? The short answer is yes and yes, as explained below.
 (c) Whether the constitution or law prevents the elimination of a position, such as chief of police, from the classified service, as listed in R.S. 33:2481, by the local civil service board when the single class holder leaves office? The short answer is no, as explained below.
Explanation to (a): It is our opinion that a constitutional amendment is not required to remove a position, such as the chief of police, from the classified service to the unclassified service of R.S. 33:2481. The constitution provides:
 Section 18. Except as inconsistent with this Part, the provisions of Article XIV, Section 15.1 of the Constitution of 1921 are retained and continued in force and effect as statutes. By law enacted by two-thirds of the elected members of each house, the legislature may amend or otherwise modify any of those provisions, but it may not abolish the system of classified civil service for such firemen and municipal policemen or make the system inapplicable to any municipality having a population exceeding thirteen thousand according to the latest decennial federal census or to any parish or fire protection district operating a regularly paid fire department. . . . (Emphasis added).
It is clear that this constitutional provision allows the legislature to amend or modify R.S. 33:2471 et seq. Our prior opinions are opposite, and thus recalled.
In general, the legislature may enact any legislation that the state constitution does not explicitly prohibit. This structure is unlike the federal constitution whose provisions are grants of powers; the Louisiana Legislature has all powers which have not been denied it by the state constitution. See, Polk v. Edwards, 626 So.2d 1128, 1131-32 (La. 1993).
The basis for our prior opinions focused on the language of the constitution which prohibits the abolishment of the system of classified service. However, the language authorizing the legislature to amend or modify the law of R.S. 33:2471 et seq. can not be ignored. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9. "[C]onstitutional provisions, no less than other laws, should be construed so as to give effect to the purpose indicated by a fair interpretation of the language used, and in the event of a conflict or inconsistency, provisions should be construed, if possible, to allow each provision to stand and be given effect." Eiche v. Louisiana Board ofElementary and Secondary Education, 582 So.2d 186, 189 (La. 1991).
The system of classified service or stated another way; the scheme of classified service is not, in our opinion, being abolished when the legislature chooses to make changes to the positions regulated by this system or scheme. This scheme of classified service was created to regulate municipal positions within a fire department and police department. However, should the municipality choose to no longer operate a fire department and/or a police department, this scheme of classified service cannot dictate that same cannot be done. This scheme of classified service "[a]pplies to any municipality which operates a regularly paid fire and police department . . ." R.S. 33:2471. See also, LSA-Const. Art. X, Sec. 16, "A system of classified fire and police civil service is created and established. It shall apply to all municipalities having a population exceeding thirteen thousand and operating a regularly paid fire and municipal police department.". See also, Heintz v. City ofGretna, 96-555 (La.App. 5 Cir. 11/26/96), 683 So.2d 926, where the court held "[t]hat the fire companies are independent contractors, that the City does not operate a regularly paid fire department, and therefore that the above laws [LSA-Const. Art. X, § 16 (1974)] relating to establishment of a police and fire civil service are not applicable."683 So.2d at 928.
Explanation to (b): It is our opinion that the legislature may amend and/or modify R.S. 33:2481, and any amendment/modification must be done by a two-thirds vote. The basis for our opinion is LSA-Const. Art. X, Sec. 18, as quoted above and explained above. Additionally, Art. X, Sec. 17 provides:
 Section 17. Permanent appointments and promotions in municipal fire and police civil service shall be made only after certification by the applicable municipal fire and police civil service board under a general system based upon merit, efficiency, fitness, and length of service as provided in Article XIV, Section 15.1 of the Constitution of 1921, subject to change by law enacted by two-thirds of the elected members of each house of the legislature. (Emphasis added).
We disagree with the City of Hammond's argument that the position of chief of police can be eliminated by a simple majority vote, rather than a two-thirds vote of the legislature. Their argument is based on a "glitch" in the 1921 constitution, which only listed the fire positions as classified, but failed to list the police positions. The police positions were added to R.S. 33:2481 in 1944 by Act No. 102. The City of Hammond's argument is that since the constitution, Art. X, Sec. 18, provides that a two-thirds vote is necessary to amend or modify those provisions of Art. XIV, Sec. 15.1 of the 1921 Constitution, and the police positions were not contained therein at the time, only a simple majority is necessary to amend the police provisions. The City of Hammond relies on Fakier v. Picou, 158 So.2d 285 (La.App. 1 Cir. 1963), writ granted,160 So.2d 277 (La. 1964), affirmed, 166 So.2d 257.
In Fakier, 158 So.2d at 289, however, the court noted:
 While it is true that section of LSA-R.S. 33:2481
dealing with police is omitted from Article 14, Section 15.1 (11) nevertheless a reading of the entire constitutional provision clearly shows it was the constitutional intent that the police department was meant to be included within the scope of the constitutional provision setting up a Police and Fire Civil Service Board.
 * * *
 It is, therefore, clear that R.S. 33:2481 as it covers police departments is not unconstitutional and police departments are included under Article 14, Section 15.1 of the Louisiana Constitution.
Thus, we can not opine that police departments were not included under Art. 14, Sec. 15.1, as same would be contrary to this jurisprudence.
Explanation to (c): The Court in City of Shreveport v. Plaisance,559 So.2d 944, 944-45 (La.App. 2 Cir. 1990), explained the applicable law on the civil service board's power and the appointing authority's power to abolish positions and classifications, as follows:
 The Board is required to "adopt and maintain' a civil service plan, or scheme of all the classes and positions within its classified service. LSA-R.S. 33:2477
(8). The appointing authority fills positions according to statutory procedures. See, e.g., R.S. 33:2473
(2), 33:2494, and 33:2495. The appointing authority may abolish a position within a class. R.S. 33:2498. However, to abolish an entire class requires an action of the Board and compliance with due process. Odom v. City of Minden, 300 So.2d 462 (La. 1974). When there is only one position in a class, the appointing authority's refusal to fill it is tantamount to abolishing the class, and is ultra vires of the appointing authority. Odom v. City of Minden, supra.
R.S. 33:2494 (G), provides:
 G. The appointing authority shall fill each vacancy, including vacancies in classifications hereafter created, within sixty days after the occurrence of the vacancy. This Subsection shall not prevent the board from abolishing unnecessary classifications. (Emphasis added).
R.S. 33:2498, provides in part:
 * * *
 Whenever an entire class is abolished in the classified service, the regular employees of the class shall be demoted to lower classes and priority to positions shall be governed by total seniority earned in the departmental service in the order of highest to lowest.
In Attorney General Opinion No. 94-189, we discussed the abolishment of the appointed chief of police position in Winnfield, Louisiana. Relying of R.S. 33:2498, we concluded that R.S. 33:2558 and R.S. 33:2498 is the procedure to be followed in connection with abolition of a position in classified service, and that abolition of the position of Chief of Police abolishes an entire class which would necessitate demotion to a lower class, consideration of priority to the position and the corresponding pay for the new position.
Finally, we quote from Odom v. City of Minden, 300 So.2d 462, 463-64
(La. 1974), as follows:
 The Constitution permits, and all parties agree, that an appointing authority may abolish a Position in the classified civil service without the formality of a Board hearing. However, abolition of a Classification within the classification system requires a public hearing before the Board in compliance with the procedure set out in La. Const. Art. XIV, § 15.1, 13, 28.
 * * *
 From these definitions and a reading of the related paragraphs of Art. XIV, § 15.1, it can be seen that the Constitution clearly envisions classes of positions or jobs; each class can be composed of any number of positions, or of only one, as in the case before us. One position within a classification could be abolished without leaving that classification of duties unmanned regarding the public's protection; abolition of an entire classification, however, also abolishes an entire category of services to the public. Clearly, a class cannot exist if no one is employed in any job within it and there is no intention that anyone be employed therefor. To permit a class to exist under such circumstances would be tantamount to granting to the appointing authority the power to alter the classification plan, in direct contravention of the clear wording of La. Const. Art. XIV.
Since in this case there was only one position within the class [position of fire inspector], the appointing authority's action of discharging the employee from the position resulted in the elimination of the classification entirely. Furthermore, this was accomplished without prior written notice, without a public hearing, and without any action by the Board, which the Court in Odom, supra found was in contravention to the Constitution, Art. XIV.
Thus, our opinion that neither the constitution nor law prevent the elimination of a position, such as chief of police, from the classified service by the local civil service board is consistent with the law and jurisprudence cited above, provided the local civil service board complies with the due process requirements of the constitution. It would seem odd that the Board would abolish the class of chief of police, as we would question who would then supervise the department. However, our concern does not change the fact that the law gives this power to the Board and it is up to the Board to make the decision of department supervision should they abolish the class that provided the supervision.
Question No. 5: Can the position of chief of police in a special charter form of government with a population exceeding 13,000, presently chosen by the mayor and council, be contracted to a private firm?
Although we have recalled Opinion No. 00-288, we are in agreement with the conclusion in that opinion that the position of Fire Chief could be amended in a home rule charter government to provide for a contract position. Under R.S. 33:2481 (B)(5), if the position of employment to which the right of employee selection, appointment, supervision, and discharge is vested in and with those other than the municipal government or an officer or employee thereof, then it is an unclassified position. If the municipal government amended its charter to provide for a contract position, and the contracting firm had the right of employee selection, appointment, supervision, and discharge, then this method would fit the definition of R.S. 33:2481 (B)(5), thus making the position an unclassified one.
For all other local governmental subdivisions operating under either the Lawrason Act, R.S. 33:321 et seq. or a Commission Plan, R.S. 33501 etseq., it would take a legislative amendment to these provisions of the law [R.S. 33:321 et seq. and/or R.S. 33:501 et seq.] by a two-thirds majority vote to allow for a contract position, which then would meet the definition of an unclassified position in R.S. 33:2481 (B)(5).
Question No. 6: If yes, can a whole department be contracted to a private firm?
It is our opinion that a whole department could be contracted to a private firm if the municipality chose not to operate a fire and/or police department, as was the case in Heintz, supra.
If the municipality chose to continue to operate both a fire and police department, but wanted to contract the whole department to a private firm, our opinion is that same would be in violation of the constitutional prohibition in Art. X, § 18 (1974) as an abolition of the civil service system. Under this scenario, in order to contract a whole department to a private firm, both a constitutional amendment and a statutory amendment would be required.
We hope this opinion and clarification addresses all of your questions and concerns. If we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 _______________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb